IN **THE**

**UNITED STATES COURT OF APPEALS**

**FOR THE EIGHTH CIRCUIT**

UNITED STATES OF AMERICA,

*Appellee,*

vs.

VICTOR D. VICKERS, JR.,

*Appellant.*

APPEAL FROM THE UNTIED STATES DISTRICT COURT

FOR THE WESTERN DISRTICT OF MISSOURI

**BRIEF OF APPELLANT**

**VICTOR D. VICKERS, JR.**

William David Langston
Langston Law, Chartered
115 East Park Street, Suite C
Olathe, Kansas 66061
(913) 341-8530
langstonlaw@sbcglobal.net

Counsel for Appellant Victor D. Vickers, Jr.

## SUMMARY OF THE CASE

This is an appeal of Victor Vickers' conviction and sentencing in the District Court for Conspiracy to Distribute Marijuana in violation of 21 U.S.C. § 841(b)(l)(D) and 846.

On September 26, 2012, the Government indicted Andre Taylor and others in the initial Indictment in this case. On February 25, 2014, Mr. Vickers was added, along with three (3) other Defendants, on the Second Superseding Indictment in the instant case.

On September 2, 2014, Mr. Vickers proceeded to trial by jury, and on September 10, 2014, he was found guilty of the lesser included offense of Conspiracy to Distribute Less Than 100 Kilograms of Marijuana in violation of 21 U.S.C. § 841 and 846. On May 28, 2015, he was sentenced to sixty (60) months imprisonment. At sentencing, the District Court found that the quantity of marijuana involved in the offense was five (5) to seven (7) kilograms, which would have resulted in a Sentencing Guidelines range of 15-21 months as his criminal history was classified as category III. The basis of sentencing Mr. Vickers at the top of his statutory maximum sentencing range was the District Court's application of U.S.S.G. § 2Al.1 on the basis of charges that were dismissed out of Jackson County, Missouri, which resulted in Mr. Vickers' Base Offense Level being level 43.

# TABLE OF CONTENTS

Summary of the Case ........................................................................ i

Table of Contents ........................................................................... ii

Table of Authorities ...................................................................... iv

Jurisdictional Statement. ................................................................ 1

Statement of the Issues ................................................................... 2

Statement of the Case ..................................................................... 3

    The Investigation ................................................................... 4

    The Trial. ............................................................................. 7

    Sentencing ........................................................................... 17

Summary of the Argument. ............................................................ 20

Argument ...................................................................................... 22

    1. THE DISTRICT COURT ERRED IN DENYING THE MOTION
    FOR JUDGMENT OF ACQUITTAL BECAUSE A RATIONAL
    TRIER OF FACT COULD NOT HAVE FOUND BEYOND A
    REASONABLE DOUBT THAT MR. VICKERS KNOWINGLY
    AGREED TO JOIN A CONSPIRACY .................................................. 22

    A. Standard of Review ......................................................... 22

    B. The Government Only Presented a Mere Modicum of Evidence ... 23

    C. The Government May Have Proved Two Isolated Buyer-Seller
    Transactions at Most ........................................................... 32

    2. THE DISTRICT COURT COMMITTED PROCEDURAL
    SENTENCING ERROR BY INCORRECTLY CALCULATING THE
    APPLICABLE GUIDELINE RANGE AND ERRONEOUSLY

APPLYING U.S.S.G. § 2A1 .1 IN VIOLATION OF THE U.S.
SENTENCING GUIDELINES MANUAL .......................................... 40

A. Standard of Review ......................................................... 40

B. U.S.S.G. § 1B1.3 (The Relevant Conduct Guideline) Requires Both
the Offense of Conviction and Relevant Conduct Offense Be Capable of
Grouping Under U.S.S.G. § 3D1.2. HOMICIDE OFFENSES ARE
EXPLICITLY EXLCUDED FROM GROUPING ............................... 42

C. Murder Must Be An Element of the Offense Charged in the
Indictment. .......................................................................... 47

D. Application of the Enhancement Would Deprive Mr. Vickers of His
Constitutional Rights Under the Sixth Amendment. ........................... 49

E. The Allegations Are Not Supported By the Evidence ..................... 50

Conclusion ..................................................................................... 54

Certificate of Service ....................................................................... 54

Certificate Of Compliance ................................................................ 55

iii

# TABLE OF AUTHORITIES

*Alleyne* v. *United States,* 133 S. Ct. 2151, (2013)............................ .48, 49, 50

*Burrage* v. *United States,* 134 S. Ct. 881, (2014) ..........................................48

*Gall* v. *United States,* 552 U.S. 38, (2007) ..................................................... 40

*Garrett* v. *United States ,* 471 U.S. 773, (1985)..............................................47

*Jackson* v. *Virginia,* 443 U.S. 307, 320 (1979)........................................ 23, 31

*O'Laughlin* v. *O'Brien,* 568 F.3d 287, 301 (1st Cir. 2009) ............................ 34

*Rita* v. *United States,* 551 U.S. 338, (2007) ....................................................40

*Stinson* v. *United States,* 508 U.S. 36, (1993)..................................................41

*Theus* v. *United States,* 611 F.3d 441, 444 (8th Cir. 2010).....................25, 29

*United States* v. *Aderhollt,* 87 F.3d 740, 744 (5th Cir. 1996) .......................47

*United States* v. *Allen,* 488 F.3d 1244, 1256 (10th Cir. 2007).................44, 50

*United States* v. *Butler,* 594 F.3d 955, 965 (8th Cir. 2010)..............................41

*United States* v. *Campbell,* 764 F.3d 874, (8th Cir. 2013) ............................ 40

*United States* v. *Caseer,* 399 F.3d 828, 840 (6th Cir. 2005)............................34

*United States* v. *Colon,* 549 F.3d 565, 569 (7th Cir. 2008).....................34, 39

*United States* v. *Elashyi,* 554 F.3d 480, 492 (5th Cir. 2008) ......................... 34

*United States* v. *Ewing,* 632 F.3d 412, (8th Cir. 2010)...................................46

*United States* v. *Dekle,* 165 F.3d 826, 829 (11th Cir. 1999) ..........................37

*United States* v. *Delgado,* 631 F.3d 685, 697 (5th Cir. 2011) ........................ 35

iv

*United States v. DeLutis,* 722 F.2d 902, 906 (1st Cir. 1983)..........................35

*United States v. Falcone,* 311 US 205, (1940)................................................35

*United States v. Fitz,* 317 F.3d 878, 882 (8th Cir. 2003) ..............22, 30, 32, 38

*United States v. Foxx,* 544 F.3d 943, (8th Cir. 2008).....................................28

*United States v. Fro!,* 518 F.2d 1134, (8th Cir. 1975).............................. 25, 26

*United States v. Hawkins,* 547 F.3d 66, 71 (2d Cir. 2008) .............................34

*United States v. Hernandez,* 301 F.3d 886 (8th Cir. 2002)............................22

*United States v. Hanken,* 541 F.3d 1146, 1158 (8th Cir. 2008).....................47

*United States v. Horton,* 693 F.3d 463, (4th Cir. 2012)..................................43

*United States v. Howard ,* 966 F.2d 1362, 1364 (10th Cir. 1992)..................35

*United States v. Johnson,* 592 F.3d 749, 754 (7th Cir. 2010)........................33

*United States v. Lennick,* 18 F.3d 814, 819 (9th Cir. 1994) ..........................35

*United States v. Logan,* 372 F. App'x 601, (6th Cir. 2010)............................37

*United States v. Lovern,* 590 F.3d 1095, (10th Cir. 2009) ............................34

*United States v. Nguyen,* 758 F.3d 1024, (8th Cir. 2014) ........................ 23, 39

*United States v. Pressler,* 256 F.3d 144, (3d Cir. 2001).................................36

*United States v. Rosnow,* 977 F.2d 399, 406 (8th Cir. 1992) ........................29

*United States v. Sellers,* 512 Fed. Appx. 319, (4th Cir. 2012).................43, 44

*United States v. Thomas,* 489 Fed. Appx. 688, (4th Cir. 2012)....................36

*United States v. Tillman,* 765 F.3d 831, (8th Cir. 2014) ................................24

v

*United States v. Todd*, 657 F.2d 212, (8th Cir. 1981)........................................ 34

*United States v. West,* 15 F.3d 119, 121 (8th Cir. 1994) ................................. 32

*United States v. Wexler,* 522 F.3d 194, 208 (2d Cir. 2008) ........................... 36

## PRIOR OR RELATED CASES AND APPEALS

*United States v. Andre Taylor,* Appeal No. 15-1236

*United States v. Brian Johnson,* No. 12-00283-04-CR-W-BW..3,4, 12, 15, 23

*United States v. Victor Vickers,* No. 13-00386-01-CR-W-DGK ..................... 3

## STATUES, RULES, AND REGULATIONS

18 U.S.C. § 924 .....................................................................................48

21 U.S.C. § 841..........""................""..."""............................................ 48, 50

21 U.S.C. § 846................................................................................ 48, 50

21 U.S.C. § 848(e)............................................................................ 48, 50

Fed. R. Crim. P. 29(a) ................................................................... 22

U.S.S.G. § 1B1.3............................................................ 19, 41 42, 43, 44, 45

U.S.S.G. § 2A1.1.................................... 18, 20, 40, 42, 43 45, 46, 47, 49, 53

U.S.S.G. § 2B3.1........................................................................... 46

U.S.S.G. § 2D1.1 ......................................................................... 41

U.S.S.G. § 3D1.2.................................................... 19, 21, 43, 45, 46

## CONSTITUTIONAL PROVISIONS

Sixth Amendment to the United States Constitution ......................... 49

## JURISDICTIONAL   STATEMENT

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, as this was a prosecution under 21 U.S.C. § 841 and 846. A jury rendered a guilty verdict on September 10, 2014, and on May 28, 2015, Mr. Vickers was sentenced to sixty (60) months imprisonment. The final judgment was entered by the District Court on May 28, 2015. Mr. Vickers timely filed a Notice of Appeal on June 9, 2015. This appeal is timely taken from a final judgment under FRAP 4, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291 because this is the Appeal of a Final Judgment of the District Court.

## STATEMENT OF THE ISSUES

I.     Whether a Rational Trier of Fact Could Have Found Mr. Vickers Guilty Beyond a Reasonable Doubt of Violating 21 U.S.C. § 841 and 846 For Conspiring to Distribute Marijuana.

       *United States* v. *Nguyen,* 758 F.3d 1024, (8th Cir. 2014)

       *United States v. Frol,* 518 F.2d 1134, (8th Cir. 1975)

       *United States v. West,* 15 F.3d 119, (8th Cir. 1994)

       *United States* v. *Johnson,* 592 F.3d 749, (7th Cir. 2010)

II.    Whether the District Court Committed Procedural Error By Applying U.S.S.G. § 2Al.1's Cross-Reference to the Sentence Imposed in Violation of the U.S. Sentencing Guidelines Manual

       *United States v. Sellers,* 512 Fed. Appx. 319, (4th Cir. 2012)

       *United States v. Ewing,* 632 F.3d 412, (8th Cir. 2010)

       *United States v. Aderhollt,* 87 F.3d 740, (5th Cir. 1996)

       *Alleyne v. United States,* 133 S.Ct. 2151, (2013)

## <u>STATEMENT OF THE CASE</u>

Although the Government falsely stated during trial that "the only drug we've ever alleged Victor Vickers sold was marijuana" (TR., Vol 3, pg. 522), Victor Vickers was originally indicted on September 26, 2012 in the *United States v. Brian Johnson* case, No. 12-00283-06-CR-W-BW, for Conspiracy to Distribute Cocaine and Cocaine base. During the course of the post Indictment investigation and after conducting several interviews of cooperating Coconspirators, the Government found that Mr. Vickers was never involved in any cocaine transactions (TR., Vol 3, pg. 526). The Government then re-indicted Mr. Vickers on November 13, 2013, as the sole Defendant in Case No. 13-00386-01-CR-W-DGK, for Conspiracy to Distribute Marijuana, and the Indictment for Conspiracy to Distribute Cocaine was dismissed on November 20, 2013. On February 25, 2014, Mr. Vickers was added, along with three (3) other Defendants, to a Superseding Indictment charging him with Conspiracy to Distribute Marijuana in the instant case. (DCD 244). The stand alone Indictment was dismissed on March 4, 2014.

On September 2, 2014, Mr. Vickers proceed to trial by jury in the instant case, and on September 10, 2014, he was found guilty of the lesser included offense of Conspiracy to Distribute Less Than 100 Kilograms of

Marijuana. His conviction was based solely on the uncorroborated and contradictory testimony of Darryl Taylor, his only alleged accomplice during the time frame of the offense of conviction.

## A. The Investigation

The FBI Agents began their investigation with a target identified as Keith Jones in 2009. Keith Jones was not indicted in the instant case, but was indicted in the *United States* v. *Brian Johnson*, Case No. 12-00283-04-CR-W-BW, for Conspiracy to Distribute Cocaine and Cocaine Base. The FBI first g o t a lead from a separate Defendant that was arrested after the execution of a search warrant, when that Defendant became a Confidential Informant and agreed to make controlled purchases. (TR., Vol 2, pg. 84-85). The Confidential Informant conducted at least ten (10) controlled purchases with Jones, and in October of 2010, the FBI was able to secure a wiretap for the purpose of uncovering customers and suppliers of cocaine. (TR., Vol 2, pg. 86-87).

During the course of the thirty (30) day wiretap, the Agents recorded more than 19,000 sessions from the phone identified as being used by Jones. (TR., Vol 2, pg. 89). Although Mr. Vickers was intercepted speaking to Jones on the phone, Mr. Vickers was never intercepted buying or selling any illegal substances to or from Jones in any of those 19,000 sessions. Through the

investigation of the wiretap of Jones' phone, the FBI identified Joshua

Hudspeth as being a supplier of Jones. This led to Hudspeth becoming a

Confidential Informant and agreeing to make controlled purchases. (TR.,

Vol2, pg. 94-95). After conducting several controlled purchases, and after

further investigation, the FBI was able to obtain a wiretap on the phone of

Andre Taylor for the purposes of identifying customers and suppliers of

illegal narcotics. (TR., Vol 2, pg. 95-98). Andre Taylor's phone was

monitored starting from March 2012, and ending in September 2012. (TR.,

Vol 2, pg. 114). FBI Agent Mark Corbin testified that Mr. Vickers was never

intercepted on any of the monitored phones calls during that time. (TR., Vol

2, pg. 116). The FBI also conducted extensive surveillance of three

residences that the Agents believed were linked to Taylor. These residences

were located at 2310 Hardesty Avenue, 2314 Hardesty Avenue, and 2318

Hardesty Avenue, and were each next door to one another. The FBI

considered this location to be "the hub" of the conspiracy. (TR., Vol 2, pg.

154). Mr. Vickers was never identified through surveillance as ever being

present at any of the Hardesty locations, and none of the Government's

witnesses testified that they ever saw Mr. Vickers at those locations.

     During the course of the investigation, Mr. Vickers was never arrested

for, or never observed through surveillance as being in possession of any illegal drugs, scales, paraphernalia, or any other material associated with drug dealing. FBI Agent Matt Kenyon testified that the FBI never retrieved any drugs from Mr. Vickers through the use of any controlled purchases during the course of the investigation. (TR., Vol 2, pg. 138-139). The FBI monitored and recorded tens of thousands of phone calls from Andre Taylor and a few other individuals that were identified in the conspiracy. Mr. Vickers was never overheard talking to Andre Taylor, Darryl Taylor, or any of the other Coconspirators on the phone. (TR., Vol 2, pg. 138).

Mr. Vickers was only identified in a few phone calls with Keith Jones, who was not a member of the Conspiracy to Distribute Marijuana charged in the Indictment. Due to the fact that Mr. Vickers was never overheard agreeing to purchase or sell any illegal substances to or from Keith Jones, the Government only introduced one phone call at trial. (Gov. Ex. 47, FBI Session 6684). During the call with Jones, Mr. Vickers receives a separate phone call on a separate phone. Mr. Vickers quotes a number to the other caller, but makes no further arrangements with the caller. There is no evidence as to the identity of the caller, no evidence of any transactions being completed as a result of that phone call, and no evidence of what the

other caller was even saying as the call was on a separate, unmonitored telephone.

## B. The Trial

Mr. Vickers, Andre Taylor, and Eric Union were the only three (3) of twenty (20) Defendants to proceed to trial, and they were all tried together. Taylor was also charged with Conspiracy to Commit Murder for Hire, which was the sole Count against Union. Union was eventually acquitted by the jury on that Count. (TR., Vol 5, pg. 985). Fifteen (15) of the remaining codefendants entered guilty pleas with several of those codefendants agreeing to cooperate. The other two (2) codefendants remain at large. The Government produced no evidence that there was any connection between Mr. Vickers and Andre Taylor other than their alleged independent dealings with a separate codefendant, namely Darryl Taylor.

The Government produced numerous phone calls between the Coconspirators to demonstrate the size and scope of the Drug Trafficking Organization. The Government also produced bags of cocaine that were recovered during controlled purchases that were conducted under the surveillance of the FBI.

FBI Agent Mark Corbin, Agent Matt Kenyon, and several

codefendants testified in the case in regards to the scope, activities, and investigation of the alleged conspiracy.

1.    Agent Mark Corbin

Agent Corbin testified about the scope of the conspiracy and how the investigation began. He testified as to the investigative procedures that were used during the course of the conspiracy, including controlled purchases, and wiretap interceptions. (TR., Vol 2, pg. 84-116). Agent Corbin testified that the FBI never completed any controlled purchases with Mr. Vickers, never seized any drugs from him, and never identified Mr. Vickers on the phone with Andre Taylor or any of the members of the charged conspiracy. (TR., Vol 2, pg. 116). Agent Corbin further testified that there was no suspicion of Mr. Vickers being involved in the cocaine trafficking of any criminal organization. (TR., Vol 4, pg. 650).

2.    Agent Matt Kenyon

Agent Kenyon testified that he was responsible for monitoring phone calls and conducting surveillance in the investigation. (TR., Vol 2, pg. 117). He testified that he reviewed phone calls daily and that the purpose of the wiretap was to collect evidence regarding the drug trafficking activities of Andre Taylor and to find out who his customers and suppliers were.(TR., Vol

2, pg. 120). Agent Kenyon testified that he never overheard Mr. Vickers on any wiretap phone calls with Taylor, and that he never conducted any controlled buys with Mr. Vickers.(TR., Vol 2, pg.  138-39).

3.    Robert Taylor

Robert Taylor testified that he was the person that introduced  the Taylor's to the Mexican connection for the purpose of procuring  large quantities of cocaine and marijuana for resale in the Kansas City area. Robert Taylor testified that he and Darryl Taylor took a trip to Mexico and were  held as human  collateral while the first shipment of drugs was sent to  Kansas City. (TR., Vol 2, pg. 145-153). Robert Taylor testified that he was familiar with the primary base of operation of the conspiracy as being the three houses on 23rd and Hardesty Avenue. Robert Taylor testified that he saw a lot of people at 2310 Hardesty, (TR., Vol 2, pg.  154), but acknowledged that he only knew Mr. Vickers through the music business, and that he had  never seen Mr. Vickers at the Hardesty location. (TR., Vol 2, pg. 210). Robert Taylor, the initial organizer of the conspiracy,  further testified that   Mr. Vickers had "no direct connection" to the conspiracy at all. (TR., Vol 2, pg. 210). Robert Taylor began cooperating at the very early stages of the post Indictment investigation and made numerous proffers on nearly t w e n t y  ( 20)

9

occasions. (TR., Vol 2, pg. 213). He testified that sometimes he would contact the authorities to provide information, and sometimes the authorities would contact him to ask for information. (TR., Vol 2, pg. 203). The first statement that was made by Robert Taylor in 2012 about Mr. Vickers was that "he heard" Mr. Vickers owed Darryl Taylor $10,000. That statement was confirmed to be false by Darryl Taylor himself. (TR., Vol 3, pg. 468). After cooperating for nearly two years, Robert Taylor gave a second statement about Mr. Vickers just two days before trial. Taylor said that Mr. Vickers approached him at the Department of Motor Vehicles and asked him about the Mexican connection. (TR., Vol 2, pg. 211). However, this statement is also contradicted by Darryl Taylor's testimony, who is the only person that could have told Mr. Vickers this information, and who testified that he never told Mr. Vickers about the Mexican connection. (TR., Vol 3, pg. 477)

4.    Alan Sanchez

The Government described Sanchez as the customer service representative between the Mexican suppliers and the Kansas City conspirators. Sanchez was hired to keep the drugs, receive the shipments, and hold them until the other conspirators needed more drugs. (TR., Vol 2, pg. 225-227). Sanchez was also responsible for sending money back to the

Mexican suppliers. (TR., Vol 2, pg. 227). Sanchez witnessed loads being received and unloaded. (TR., Vol 2, pg. 229-230). Sanchez testified that marijuana shipments varied and that "sometimes it was just every two months." (TR., Vol 2, pg. 229). Sanchez further testified that he did not know Mr. Vickers and that he had never seen him before. (TR., Vol 2, pg. 248).

5.    Robert Clark

Clark was indicted in a separate conspiracy and agreed to cooperate in that case as well as other cases including the instant case. (TR., Vol 2, pg. 252-253). Clark testified to his other dealings, but testified that he did not know Mr. Vickers. (TR., Vol 2, pg. 272-273).

6.    Ruben Machiche

Machiche testified that he was one of the drivers of a few marijuana shipments that came to the area. (TR., Vol 2, pg. 277). He testified that he has been to the Hardesty residences (TR., Vol 2, pg. 291-292), but never saw nor dealt with Mr. Vickers, and that he did not know Mr. Vickers. (TR., Vol 2, pg. 295).

7.    Joshua Hudspeth

Joshua Hudspeth was originally identified through the investigation of Keith Jones. After receiving a Target Intercept Letter in 2011, Hudspeth

became a Confidential Informant and conducted his first controlled purchase on June 24, 2011. Hudspeth was also indicted in the *United States v. Brian Johnson* case. Hudspeth testified that he did not witness Mr. Vickers conduct any transactions, but that he seen Mr. Vickers in possession of small amounts of marijuana in 2005 or 2006, (TR., Vol 3, pg. 347) which was long before the charged conspiracy began. Hudspeth testified that he "assumed" that he had seen Mr. Vickers sell user amounts of marijuana to a mutual friend in 2010, (TR., Vol 3, pg. 348-50) but did not know the amount and did not see any money being exchanged.(TR., Vol 3, pg. 358-59). He also testified that he did not know where the marijuana came from. Hudspeth further testified that the mutual friend was not listed in the Indictment (TR., Vol 3, pg. 359-360), and therefore that person was not considered to be a Coconspirator. This alleged transaction would have also taken place before Mr. Vickers alleged participation in the instant conspiracy.

8.    Daniel Howard

Howard testified that he observed Mr. Vickers sell "user quantities" of marijuana to the same mutual friend testified about by Hudspeth (TR., Vol 3, pg. 385-386), but testified that he did not have any information as to the source of supply of marijuana. (TR., Vol 3, pg. 391). Howard testified that he

was at the Hardesty residences numerous times (TR., Vol 3, pg. 369), but further testified that he had no information of Mr. Vickers ever dealing with Andre Taylor or his associates. (TR., Vol 3, pg. 394).

9.    Marlon Minton

Minton testified to his dealings with other members of the conspiracy, but testified that he did not know Mr. Vickers and that he never dealt with Mr. Vickers (TR., Vol 3, pg. 419).

10.    Darryl Taylor

Daryl Taylor is the nephew of Andre Taylor (TR., Vol 3, pg. 426), and the only Cooperating Conspirator charged in the Indictment to allege participating in direct transactions with Mr. Vickers. During the course of the post Indictment investigation, Darryl Taylor provided several different stories to the authorities. (TR., Vol 3, pg. 454). Prior to trial, it was brought to the attention of the authorities that Darryl Taylor had authored a letter indicating that he had changed and falsified his story, and Taylor testified that the Government put "heat" on him for doing that. (TR., Vol 3, pg. 454-55).

On direct examination, Darryl Taylor was asked if his original statement was that he sold Mr. Vickers marijuana in 5, 7, and 8 pound

increments every week or two. (TR., Vol 3, pg. 430) To clarify, he inferred that his original statement may have been misinterpreted, testifying that "What I said was every week, every other week. That meant when a shipment was around. There was probably some around at that time, I made a sale that week, and then probably didn't do it again until a month later." (TR., Vol 3, pg. 433) Alan Sanchez testified that marijuana shipments varied and that "sometimes it was just every two months." (TR., Vol 2, pg. 229).

Darryl Taylor could not provide an accurate conclusion, but testified that he only sold marijuana to Mr. Vickers "probably two times"(TR., Vol 3, pg. 430), and the most he could have sold to Mr. Vickers was "no more than 20, 25 pounds", (TR., Vol 3, pg. 432) but then ultimately concluded that the "most I sold him was 14 pounds." (TR., Vol 3, pg. 472). He could not provide the dates of the transactions, testifying that "I don't know. Maybe April or May", and that Mr. Vickers was incarcerated a couple of months later. (TR., Vol 3, pg. 474). Darryl Taylor did not remember the location of the transactions (TR., Vol 3, pg. 475), or how he was paid for the transaction. (TR., Vol 3, pg. 480). During direct examination, Darryl Taylor was asked to clarify the statement he made where he said he would meet Mr. Vickers "in traffic to sell him marijuana."(TR., Vol 3, pg. 446). On cross-examination,

Darryl Taylor testified that he did not remember where the transactions took place saying maybe at "a gas station or something"(TR., Vol 3, pg. 475), but was reminded by defense counsel that in his initial statement he said that the transaction took place on 36th and Wabash. (TR., Vol 3, pg. 480). Taylor testified that he sometimes kept a ledger of his transactions, but that he never kept one for any transactions with Mr. Vickers. (TR., Vol 3, pg. 477).

Darryl Taylor testified about two separate times that Taylor sold marijuana to a mutual friend of the two, when Mr. Vickers was merely present. Taylor testified that on these occasions Mr. Vickers did not give him any money, Taylor did not give Mr. Vickers any drugs, and Taylor had no knowledge of Mr. Vickers making any money, or having anything to do with the transactions. (TR., Vol 3, pg. 473-74). Darryl Taylor also confirmed that he never fronted any drugs to Mr. Vickers because he testified that    Mr. Vickers never owed him any amount of money. (TR., Vol 3, pg.   468).

11.    Keith Emery Jones, II

Jones was not indicted in the instant conspiracy,  but rather  was indicted in the previously mentioned *United States* v. *Brian Johnson* case in which Mr. Vickers was also initially indicted. Jones agreed to cooperate in that case as well as other cases in exchange for a reduced sentence. (Gov Ex.

102). Jones testified that he had known Mr. Vickers since they were kids and testified that he sold marijuana directly to Mr. Vickers beginning in 2008 with the last transaction being in 2009. (TR., Vol 3, pg. 514). These alleged transactions would have occurred before the conspiracy began. Further, these transactions would have no connection to the charged conspiracy because Jones testified that he only sold marijuana from 2008 til 2010, and that he had three suppliers, none of which were conspirators in the charged Indictment. (TR., Vol 3, pg. 509). Jones testified that he purchased marijuana from Rahmon Allen "around 2009, 2010, 2008" (TR., Vol 3, pg. 489), but that was also before the conspiracy began. Jones testified that he never purchased marijuana from Andre Taylor because of the price. (TR., Vol 3, pg. 518, 520). Jones further testified that Mr. Vickers was never involved with cocaine. (TR., Vol 3, pg. 522). Jones also testified that Mr. Vickers told him (Jones) that he (Vickers) purchased marijuana from Rahmon Allen in 2010. However, Jones testified that "I didn't go with him when he went and purchased it" (TR., Vol 3, pg.491). These alleged transactions would also have been outside of the scope of the conspiracy because there is no evidence of Allen entering the conspiracy until 2012. (TR., Vol 2, pg. 249). The one and only phone call played by the Government involving Mr.

Vickers, (Gov. Ex. 47, FBI Session 6684), was a call where Mr. Vickers was one the phone talking to Jones about various other subjects and not drug dealing. However, during that call, Mr. Vickers received a separate call on a separate phone, and quoted a number to the caller. Jones testified that Mr. Vickers never agreed to meet anyone at a certain place, at a certain time for a certain amount of drugs, and that no sale was finalized on that phone call. (TR., Vol 3, pg. 511). Jones further testified that he was not buying or selling anything to or from Mr. Vickers in that phone call, and testified that the call was not a drug phone call. (TR., Vol 3, pg. 511-12).

12. Special Agent Mike Oyler

Agent Oyler testified that he came on to the investigation as a co-case agent in early 2012. He was responsible for conducting surveillance of several residences and listening to phone calls. (TR., Vol 3, pg. 541-542). Agent Oyler never observed Mr. Vickers in any illegal conduct. (TR., Vol 4, pg. 603-604).

At the close of all the evidence, Mr. Vickers moved for a judgment of acquittal, arguing that the Government did not produce evidence sufficient that a reasonable juror could find him guilty beyond a reasonable doubt. (TR., Vol 4, pg. 730-31).

## C. Sentencing

The sentencing hearing was held on May 28, 2015. The primary issues at sentencing, as addressed in Defendant's Sentencing Memorandum(DCD 641), were the quantity of drugs attributable to the sentence, and whether or not a dismissed murder charge out of Jackson County, Missouri could legally be applied as relevant conduct to the conspiracy conviction. The District Court began by addressing the objections raised by Mr, Vickers in regards to the Presentence Investigation Report (PSR). (STR., Vol 1, pg. 7). The PSR listed an exaggerated drug quantity which placed the Base Offense Level at 24, but advised that

U.S.S.G. § 2A l.1 was applicable to the Base Offense Level, which placed Mr. Vickers' Base Offense Level at 43, due to dismissed murder charges being considered as relevant conduct. (PSR, p. 13). (STR., Vol 1, pg. 14). In sustaining the majority of Mr. Vickers' objections to the PSR, the District Court determined that the statutory maximum for the Offense of Conviction was five years, and the quantity of drugs attributable to the Offense of Conviction was five (5) to seven (7) kilograms which resulted in a Base Offense Level of 12. (STR., Vol 1, pg. 16).

The District Court then turned to the issue of relevant conduct. The sole evidence introduced by the Government was a video recorded statement of Kristen Forbush, the surviving victim in the homicide case. Counsel for

Mr. Vickers objected to the introduction of the video evidence, asking the District Court to first decide the legal applicability of the enhancement before hearing the evidence. (STR., Vol 1, pgs. 4-5). Mr. Vickers argued in both his objections to the PSR, and in his Sentencing Memorandum, that the U.S. Sentencing Guidelines Manual did not allow the application of U.S.S.G. § 2A1.1 in the instant case, arguing that the relevant conduct guideline, U.S.S.G. § 1B1.3, requires that in order for a separate offense to be considered as relevant conduct to the Offense of Conviction, both the Offense of Conviction and the relevant conduct offense must be capable of grouping under U.S.S.G. § 3D1.2. Mr. Vickers further argued that homicide offenses are explicitly excluded from the operation of the grouping rules in U.S.S.G. § 3D1.2. The District Court denied the objection and heard the evidence. (STR., Vol 1, pg. 22). After hearing the hour long video recorded statement of Forbush, the District Court applied the enhancement under U.S.S.G. § 2A1.1 and imposed a sentence of sixty (60) months imprisonment. (STR., Vol 1, pg. 58).

## SUMMARY OF THE ARGUMENT

The Government did not prove beyond a reasonable doubt that Mr. Vickers ever made the requisite agreement with Darryl Taylor[1], or with any of the other Coconspirators charged in the Indictment, to knowingly join a Drug Trafficking Organization, or a Conspiracy to Distribute Marijuana. There was no evidence that Mr. Vickers knew of the scope or details of the conspiracy, and no evidence that he knowingly made an agreement to join the conspiracy. The Government may have proven, at most, two mere buyer seller transactions between Darryl Taylor and Mr. Vickers, which is insufficient to sustain a conspiracy conviction.

Therefore, even after construing the evidence in the light most favorable to the Government, deferring to the Jury in assessing credibility, and resolving all conflicts in the evidence in favor of the Government, this Honorable Court should overturn Mr. Vickers conviction for conspiring to distribute marijuana.

As to the sentencing, the District Court committed procedural error by applying U.S.S.G. § 2A 1 .1 to the sentence to be imposed. (STR., Vol 1, pg. 58). In order for a separate offense to be considered as relevant conduct to the offense of

1. Darryl Taylor is the only member of the conspiracy charged in the Indictment that testified to allegedly having direct transactions with Mr. Vickers.

Conviction, U.S.S.G. § 1 B l.3 (The relevant Conduct Guideline), requires that both the Offense of Conviction and the Relevant Conduct Offense must be capable of grouping under U.S.S.G. § 3Dl .2. Homicide offenses are explicitly excluded from the operation of the grouping rules in U.S.S.G. § 3D 1.2. Further, in order for the enhancement to properly apply, murder must be an object of the conspiracy that is charged in the Indictment. The District Court erred by improperly calculating the Base Offense Level to be 43. The District Court found that the quantity of drugs attributable to the Offense of Conviction was five (5) to seven (7) kilograms of marijuana, therefore the Base Offense Level should have been determined to be a level 12, and the Sentencing Guidelines range should have been 15-21 months, as Mr. Vickers criminal history was classified as being category III. (STR., Vol 1, pgs. 14-15). This Court should vacate Mr. Vickers' sentence, and remand for resentencing with instructions consistent with the opinion of this Court.

<u>**ARGUMENT**</u>

**1. THE DISTRICT COURT ERRED IN DENYING THE MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE A RATIONAL TRIER OF FACT COULD NOT HAVE FOUND BEYOND A REASONABLE DOUBT THAT MR. VICKERS KNOWINGLY AGREED TO JOIN A CONSPIRACY**

The first question to be addressed in this Appeal is whether the Government presented sufficient evidence to the Jury to sustain a conviction for Conspiracy to Distribute Marijuana.

**A. Standard of Review**

Under Fed. R. Crim. P. 29(a), a court shall enter a judgment of acquittal if the evidence presented at trial is insufficient to sustain a conviction. *United States v. Hernandez,* 301 F.3d 886 (8th Cir. 2002). In a conspiracy case, the Government must prove there was a conspiracy with an illegal purpose, that the Defendant was aware of the conspiracy, and that he knowingly became a part of it. *United States v. Fitz,* 317 F.3d 878, 882 (8th Cir. 2003). An Appellate Court reviews the sufficiency of the evidence de novo, but it must view the evidence in the light most favorable to the verdict and draw all reasonable inferences in its favor. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements

22

of the crime beyond a reasonable doubt. *United States v. Nguyen,* 758 F.3d 1024, (8th Cir. 2014). The Supreme Court has stated that a "mere modicum" of evidence cannot by itself rationally support a conviction beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 320 (1979).

**B.** The Government Only Presented a Mere Modicum of Evidence

If there was ever a case that should be overturned for insufficient evidence, it is the case of Mr. Vickers. The lack of evidence in this case was clearly demonstrated well before trial even began. Mr. Vickers was originally indicted for Conspiracy to Distribute Cocaine and Cocaine Base. That Indictment was based on mere speculation of the activities of Mr. Vickers.

After the post Indictment investigation, and after numerous interviews of Cooperating Defendants, not a single person alleged that Mr. Vickers was involved with cocaine. Even with knowledge of this fact, the United States Attorney falsely stated during trial that "the only drug we've ever alleged that Victor Vickers sold was marijuana." (TR., Vol 3, pg. 522). These statements confirm that the Government had no concrete evidence against Mr. Vickers from the very beginning, and depended on cooperating individuals to build a case. In a bench conference during trial, the Government explained to the Judge that Mr. Vickers was initially indicted in the *United States* v. *Brian*

23

*Johnson* case for Conspiracy to Distribute Cocaine, and as cooperators came

in, the Government figured out that Mr. Vickers was never involved in any

cocaine transactions. (TR. Vol 3, pg. 526). After being incorrect in the

speculation that Mr. Vickers was involved in the distribution of cocaine, the

Government then indicted Mr. Vickers as the sole Defendant in Case No.13-

00386-01-CR-W-DGK, for Conspiracy to Distribute Marijuana, and the

Indictment for Conspiracy to Distribute Cocaine was dismissed on November

20, 2013 based on the statements of those cooperating individuals. The law

is well settled that a Defendant cannot conspire with himself. "To establish

a

Conspiracy, the Government must prove the existence of an agreement

among two or more people to achieve an illegal purpose." *United States v.*

*Tillman,* 765 F.3d 831, (8th Cir. 2014). On February 25, 2014, one month

before trial was scheduled to begin in that second Indictment, Mr. Vickers

was added, along with three (3) other Defendants, to a Superseding

Indictment charging him with Conspiracy to Distribute Marijuana in the

instant case. The stand alone Indictment was dismissed on March 4, 2014.

The only evidence that the Government possessed prior to the first

Indictment that could be considered as even slightly damaging, is Gov. Ex.

47, FBI Session 6684, which is the one and only phone call introduced by

the Government at trial. However, this is a phone call where Mr. Vickers was on the phone with Keith Jones having a non drug-related conversation, and Mr. Vickers receives a separate phone call on a separate telephone.    Mr. Vickers may have discussed a price with the unknown caller, but no agreement was reached with any person, no transaction was made, and the other caller could not be identified as a Coconspirator, because the other caller could not be identified at all. This phone call may give rise to a reasonable suspicion that Mr. Vickers may have been engaged in some sort of illegal activity, but it provides no evidentiary value whatsoever in determining whether Mr. Vickers participated in the charged Conspiracy. "Proof that a Defendant was part of some other Conspiracy is not enough to convict." *Theus v.  United States,* 611 F.3d 441, 444 (8th Cir.  2010).

The only evidence at trial that could be relevant to the Conspiracy charged in the Indictment, is the uncorroborated and inconsistent testimony of Darryl Taylor, the only testifying Coconspirator that alleged to have sold marijuana directly to Mr. Vickers. In *United States v. Frol,* 518 F.2d 1134, (8th Cir. 1975), the Eighth Circuit vacated the Defendant's conviction in that case and remanded for a judgment of acquittal, holding that "the Government failed to establish by independent evidence that

Defendant was a participant in a Conspiracy with the [other] person. Evidence that Defendant and the person were acquaintances and perhaps friends was not enough, and there was no evidence other than the person's own reported statements that they were engaged in a joint enterprise. " *Frol,* 518 F.2d at 1137. In the instant case, the Government did not present even a scintilla of independent evidence to corroborate any of Darryl Taylor's testimony. No recorded phone calls, no pen register information or call records, no surveillance, not even a Facebook picture of the two men together. The Government made a point to show pictures taken from Facebook of Keith Jones and Mr. Vickers, but provided no such evidence of Mr. Vickers and the most important witness to the Government's case against Mr. Vickers.

After a nearly five year investigation from 2009-2014, including a three year pre-Indictment investigation using wiretaps, controlled purchases, and surveillance, and an additional two year post-Indictment investigation of Cooperating Defendants, the Government's only evidence against Mr. Vickersin regards to the offense that was charged in the Indictment, is the uncorroborated, inconsistent testimony of Darryl Taylor.

As testified by Agent Mark Corbin, (TR.,Vol 2 pg. 116) Agent Matt Kenyon, (TR.,Vol 2 pgs. 138-139) and Special Agent Mike Oyler, (TR.Vol 4 pgs. 603-604) the FBI Agents investigating this case never recovered any drugs from Mr. Vickers, never observed Mr. Vickers under any surveillance conducting illegal transactions or in possession of any illegal drugs or paraphernalia, never observed him at any of the Hardesty Avenue residences which were deemed to be "the hub" of the Conspiracy, and never captured any recorded phone calls between Mr. Vickers and Darryl Taylor, or between Mr. Vickers and any other member of the charged Conspiracy.

Keith Jones testified to having direct transactions with Mr. Vickers, but Jones was not a member of the charged Conspiracy and those transactions allegedly took place before the Conspiracy even began. (TR., Vol 3, pgs. 492-494). Jones testified that he only sold marijuana from 2008 til 2010, and that he had three suppliers, none of which were conspirators in the charged Indictment. (TR., Vol 3, pgs. 492-493). Jones testified that he never purchased marijuana from the Taylor's because of the price. Jones specifically testified that he stopped selling marijuana in 2010, and that he began exclusively selling cocaine, and testified that he knew Mr. Vickers never dealt with cocaine. (TR., Vol 3, pg. 494).

Jones testified that Mr. Vickers "told him"(Jones) that he (Vickers) purchased marijuana from Rahmon Allen, who was charged in the

Conspiracy, but the Government presented no evidence to corroborate those statements, and no evidence to support a finding that Mr. Vickers even knew Allen. But most importantly, the Government did not present any evidence of Allen entering the Conspiracy until 2012. (TR., Vol 3, pg. 491). Mr. Vickers was alleged to have first participated in a transaction with Darryl Taylor in April or May 2011. (TR., Vol 3, pg. 474).

Very shortly after, Mr. Vickers was incarcerated, and he has remained incarcerated since August 18, 2011. The Eighth Circuit has noted that "for purposes of Relevant Conduct, the District Court may only take into account quantities at issue during the time that a Defendant was a part of the Conspiracy." *United States v. Foxx,* 544 F.3d 943, (8th Cir. 2008). The fact that the District Court sustained Mr. Vickers' objections as to these allegations in the PSR, and none of those alleged transactions were considered by the Court as Relevant Conduct to the Offense of Conviction, supports the finding that these transactions, if they even occurred at all, would have been outside of the scope of the Conspiracy charged in the Indictment, and cannot be considered as evidence to support the Offense of Conviction. (STR., Vol 1, pgs. 14-15).

In viewing the evidence in the light most favorable to the Prosecution, we could assume just for arguendo that those transactions did in fact occur.

However, it would still not help the Government's case because, the Government must prove beyond a reasonable doubt that each Defendant was a member of the Conspiracy charged in the Indictment. See *Theus v. United States,* 611 F.3d 441, 444 (8th Cir. 2010). "Proof that a Defendant was part of some other Conspiracy is not enough to convict." Id. See also, *United States v. Rosnow,* 977 F.2d 399, 406 (8th Cir. 1992)(Conspiracy convictions were reversed because the evidence failed to establish that the Defendants participated in a single Conspiracy; the evidence showed that there were multiple conspiracies).

Jones clearly stated that he did not purchase marijuana from any of the Defendants charged in the Conspiracy in this case, so any marijuana Jones could have sold to Mr. Vickers would have been from a completely different supplier, and part of a completely separate operation. (TR., Vol 3, pg. 509). The same goes for Allen. There is no evidence of Allen joining the Conspiracy charged in the Indictment until 2012, which is well after Mr. Vickers was incarcerated. So any marijuana that Mr. Vickers could have purchased from Allen would have been from a completely different supplier, and a completely different operation.

Defense counsel attempted to develop, through cross-examination, Mr.

Vickers' position that he was merely present during all four of the transactions testified about by Darryl Taylor. Darryl Taylor admitted that Mr. Vickers was merely present during two transactions between Taylor and a mutual friend of the two, and admitted that Mr. Vickers had no involvement in those transactions. He admitted that during those occasions Mr. Vickers did not give him any money, and he did not give Mr. Vickers any drugs. (TR., Vol 3, pg. 473).It is well established that "a Defendant's mere presence, coupled with knowledge that someone else who intends to sell drugs is present, is insufficient to establish membership in a Conspiracy." *Unites States v. Fitz,* 317 F.3d 878, 882 (8th Cir. 2003). However, Taylor also testified that he did sell marijuana directly to Mr. Vickers on only two occasions in the amounts of five (5) to seven (7) kilograms for a total of ten (10) to fourteen (14) pounds. Taylor alleged that the first transaction occurred in April or May of 2011, but was unable to provide an accurate date. During cross-examination, the statement about the time frame was contradicted when he was asked about the phone number he contacted Mr. Vickers on, and Taylor said he called a phone number that was disconnected in 2010. Taylor did not remember the exact quantity, the dates of the transactions, or any specific details. (TR., Vol 3, pg. 476).Although credibility is an issue exclusively reserved for the Jury, it is notable to mention that Darryl Taylor

_____

even admitted to falsifying his story before trial. It should also be noted that the Government put "heat" on him for doing so, (TR., Vol 3, pg. 455) which must have definitely affected his testimony because of the fact that he has two prior drug convictions and would have faced a life sentence.

The only evidence that was provided through Darryl Taylor's testimony was that Taylor alleged that he sold marijuana to Mr. Vickers on two occasions. The Agents conducting the investigation did not recover any drugs from the alleged transaction, and the Government presented no evidence to support his testimony. Taylor could not even provide an accurate account of the events. Darryl Taylor's testimony did not produce sufficient evidence of the dates of the alleged transactions (TR., Vol 3, pg. 474, 476), did not produce sufficient evidence of the quantities (TR., Vol 3, pg. 430-33, 469-70, 472, 475-76), did not produce sufficient evidence of the location of the transactions (TR., Vol 3, pg. 446, 475, 480), did not produce sufficient evidence of the price that was paid for the drugs (TR., Vol 3, pg. 480-81), and did not produce reliable evidence that transactions even occurred at all (TR., Vol 3, pg. 477).

Mr. Vickers argues that this extremely scant evidence should not be sufficient to sustain his conviction because as noted by the Supreme Court, a

"mere modicum" of evidence cannot by itself rationally support a conviction beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 320 (1979). As previously stated, the Government did not present even a scintilla of independent evidence to corroborate any of Darryl Taylor's testimony. No recorded phone calls, no pen register information or call records, no surveillance, not even a Facebook picture of the two men together.

**C.** The Government May Have Proved Two Isolated Buyer-Seller Transactions at Most

In a Conspiracy case, the Government must prove there was a Conspiracy with an illegal purpose, that the Defendant was aware of the Conspiracy, and that he knowingly became a part of it. *United States v. Fitz,* 317 F.3d 878, 882 (8th Cir. 2003). Even if the Jury did believe that Mr. Vickers did in fact purchase marijuana on the two occasions testified about by Darryl Taylor, this evidence would only establish two mere Buyer-Seller transactions, which alone is insufficient to sustain a conviction for Conspiracy to Distribute. It is well settled that "A mere sales agreement with respect to contraband does not constitute a Conspiracy; there must be some understanding "beyond" that before the evidence can support a conviction for Conspiracy." *United States v. West,* 15 F.3d 119, 121 (8th Cir. 1994).

Taylor testified that he did not front any drugs to Mr. Vickers, and Mr.

——------------

Vickers never owed him any amount of money at any time. (TR., Vol 3, pg. 468).Mr. Vickers andTaylor had no agreement for further distribution, and did not pool their resources or have a stake in each others venture. The evidence presented through the testimony of Darryl Taylor, if believed, shows nothing more than an alleged agreement to buy an amount of drugs on behalf of Mr. Vickers, and an agreement to sell an amount of drugs on behalf of Darryl Taylor. "Adrug purchaser does not enter into a Conspiracy with his supplier simply byreselling the drugs to his own customers. A Conspiracy requires more; it requires evidence that the buyer and seller entered into an agreement to commit a crime other than the crime that consists of the sale itself. The

Government therefore has to prove that a Defendant and someone else entered into an agreement to distribute drugs, and this requires evidence that is distinct from the agreement to complete the underlying wholesale drug transaction." *United States v. Johnson,* 592 F.3d 749, 754 (7th Cir. 2010), *contra, United States v. Peeler*, 779 F.3d 773 (8th Cir. 2015).

In *Johnson,* the Seventh Circuit provided an extremely helpful analysis that explains the importance of distinguishing a Conspiracy from mere Buyer-Seller Relationships:

> "to prove a conspiracy, the government must offer evidence establishing an agreement to distribute drugs that is distinct from evidence of the agreement to complete the underlying drug deals."
> "This rule is based on a fundamental principle of criminal law: the

33

requirement that the government prove the defendant guilty beyond a reasonable doubt. If the prosecution rests its case only on evidence that a buyer and seller traded in large quantities of drugs, used standardized transactions, and had a prolonged relationship, then the jury would have to choose between two equally plausible inferences. On one hand, the jury could infer that the purchaser and the supplier conspired to distribute drugs. On the other hand, the jury could infer that the purchaser was just a repeat wholesale customer of the supplier and that the two had not entered into an agreement to distribute drugs to others. In this situation, the evidence is essentially in equipoise; the plausibility of each inference is about the same, so the jury necessarily would have to entertain a reasonable doubt on the conspiracy charge. See, e.g., *United States v. Lovern,* Nos. 08-3141 & 08-3149, 590 F.3d 1095, 2009 U.S. App. LEXIS 20775, 2009 WL 2871538, at *9 (10th Cir. Sept. 9, 2009) **(When "the evidence . . . gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, we must reverse the conviction, as under these circumstances a reasonable Jury must necessarily entertain a reasonable doubt."** (internal quotation marks omitted)); *O'Laughlin v. O'Brien,* 568 F.3d 287, 301 (1st Cir. 2009) (same); *United States v. Elashyi,* 554 F.3d 480, 492 (5th Cir. 2008) ("When the evidence is essentially in balance, a reasonable jury must necessarily entertain a reasonable doubt." (internal quotation marks omitted)); *United States v. Hawkins,* 547 F.3d 66, 71 (2d Cir. 2008) (same); *United States v. Caseer,* 399 F.3d 828, 840 (6th Cir. 2005) (same). **Absent some other evidence of a conspiratorial agreement to tip the scales, the jury must acquit.** Otherwise, the law would make any "wholesale customer of a conspiracy . . . a co-conspirator per se." *Colon,* 549 F.3d at 569. (emphasis added). *Johnson,* 592 F.3d at 755, *contra, United States v. Peeler*, 779 F.3d 773 (8th Cir. 2015).

Every single Circuit Court of Appeals has consistently held that a mere Buyer-Seller Relationship is not enough to convict a Defendant of Conspiracy, and every single Circuit has reversed the convictions of Defendants just like Mr. Vickers, that only participated in mere Buyer-Seller Transactions. *contra, United States v. Peeler*, 779 F.3d 773 (8th Cir. 2015). Even the United States Supreme Court has ruled that, "Mere co-operation without

an understanding may not make a Conspiracy" and further that, "It is fundamental that mere passive cognizance of a Conspiracy is not sufficient tomake a Co-conspirator or an Aider or Abettor." *United States* v. *Falcone,* 311US 205, (1940). Although the Eighth Circuit has held that the purchase of distribution quantities may permit an inference of Conspiracy, the Eighth Circuit has also held, when reversing a Conspiracy conviction in *United States v. Todd,* 657 F.2d 212, (8th Cir. 1981), that "We are unaware of any case in which a court or Jury was allowed to convict on the basis of inferencealone." Id. at 217.

The majority of the other Circuits hold that even distribution quantities of drugs is not enough to sustain a Conspiracy conviction.

*United States v. Lennick,* 18 F.3d 814, 819 (9th Cir. 1994): Proof that a Defendant sold drugs to other individuals does not prove the existence of a Conspiracy. Rather, Conspiracy requires proof of an agreement to commit a crime other than the crime that consists of the sale itself. Were the rule otherwise, every narcotics sale would constitute a Conspiracy.

*United States v. Delgado,* 631 F.3d 685, 697 (5th Cir. 2011): The fact that a transaction involves a large or wholesale quantity of drugs is insufficient to prove the existence of a Conspiracy to Possess with Intent to

35

Distribute. The Government must prove, not only that the Seller knew the buyer would engage in further distribution, but that the Seller intended and agreed to the shared purpose of further distribution. *contra, United States v. Peeler*, 779 F.3d 773 (8th Cir. 2015).

*United States v. Howard*, 966 F.2d 1362, 1364 (10th Cir. 1992): The huge quantity of crack cocaine involved in this case permits an inference of Conspiracy, but by itself this is not enough to convict Defendant. Id at 1364.

*United States v. DeLutis,* 722 F.2d 902, 906 (1st Cir. 1983): A single sale of drugs without more does not establish a Conspiracy. There must be an agreement by the parties, not merely a getting together to consummate the transaction. The commission of the substantive offense and a Conspiracy to commit it are separate and distinct offenses.

*United States v. Wexler,* 522 F.3d 194, 208 (2d Cir. 2008): An agreement that one member of a Conspiracy supply another with a drug does not comprise an agreement to distribute that drug"

*United States v. Pressler,* 256 F.3d 144, (3d Cir. 2001): The Court of Appeals noted that the evidence showed that first Defendant obtained and distributed a large amount of heroin, that his main supplier also distributed the drug to many others, and that some of the supplier's customers had been referred to him by the Defendant. The Appellate court observed that the

Government proved that Defendant was aware of all of the above facts, but that there was no evidence that the Defendant ever agreed to work with either the Supplier or his Buyers to achieve a common goal or advance a common interest.

*United States* v. *Thomas,* 489 Fed. Appx. 688, (4th Cir. 2012): An agreement to exchange drugs for money (or something else of value) - the crux of the Buyer-Seller Transaction - is insufficient to prove a Conspiracy.

*United States* v. *Logan,* 372 F. App'x 601, 606, 609 (6th Cir. 2010): The Court reversed a drug Conspiracy conviction for insufficient evidence. Logan involved in only two undercover drug purchases, and this Court held that the Government did not produce sufficient evidence to show an agreement among the alleged Coconspirators. Id at 605-06.

*United States* v. *Dekle,* 165 F.3d 826, 829 (11th Cir. 1999): The judgment of conviction for Conspiracy was reversed, because the existence of a buyer and seller did not, without more, establish a Conspiracy to traffic drugs. "The mere agreement of one person to buy what another agrees to sell, standing alone, does not support a Conspiracy conviction." Id.

Every major player of the Conspiracy that testified said that they did not know Mr. Vickers, and that they had never seen him before, and specifically, no one ever testified to seeing him at any of the Hardesty residences which were considered to be "the hub" or "base of operation" of the Conspiracy. Robert Taylor, the essential connection between the Kansas City conspirators and the Mexican connection, specifically stated that Mr. Vickers had "no direct connection to the Conspiracy at all. (TR., Vol 2, pg. 210). "In a Conspiracy case, the Government must prove...that the Defendant was aware of the Conspiracy, and that he knowingly became a part of it. *United States v. Fitz,* 317 F.3d 878, 882 (8th Cir. 2003).

In the case at hand, and despite the Government's dishonest statement at trial that "the only drug we've ever alleged that Victor Vickers sold was marijuana", the Government originally indicted Mr. Vickers for Conspiracy to Distribute Cocaine on mere speculation of his activities without any concrete evidence, and that lack of evidence continued throughout the trial as the

Government presented insufficient evidence to sustain Mr. Vickers' conviction. The essential elements of Mr. Vickers' knowledge of the Conspiracy, and the element of Mr. Vickers making a knowing agreement tojoin the Conspiracy are both lacking.

Even after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could NOT have found the essential elements of the crime beyond a reasonable doubt. *United States v. Nguyen,* 758 F.3d 1024 (8th Cir. 2014). Mr. Vickers submitted a timely request that a Jury instruction explaining a Buyer-Seller Relationship be given, but the District Court offered no such instruction. A Buyer-Seller Instruction may have helped the Jury to understand that on one hand, the Jury could infer thatMr. Vickers and Darryl Taylor conspired to distribute drugs, even absent thefact that Government presented no evidence whatsoever that the two made any agreement as to the distribution of the drugs that were allegedly purchased. On the other hand, the Jury could infer that Mr. Vickers was just a repeat wholesale customer of Darryl Taylor and that the two had not entered into an agreement to distribute drugs to others. "In this situation, the evidence is essentially in equipoise; the plausibility of each inference is about the same, so the Jury necessarily would have to entertain a reasonable

doubt on the Conspiracy charge." *United States v. Johnson,* 592 F.3d 749, 755

(7th Cir. 2010). **"Absent some other evidence of a conspiratorial**

**agreement to tip the scales, the jury must acquit.** Otherwise, the law

would make any "wholesale customer of a conspiracy . . . a co-conspirator

per se."" *United States v. Colon,* 549 F.3d 565, 569 (7th Cir. 2008).

(emphasis added). Therefore, this Honorable Court should overturn Mr.

Vickers' conviction for Conspiracy to Distribute Marijuana. *contra, United States v.*

*Peeler,* 779 F.3d 773 (8th Cir. 2015).


2. THE DISTRCIT COURT COMMITTED PROCEDURAL
SENTENCING ERROR BY INCORRECTLY CALCULATING THE
APPLICABLE GUIDELINE RANGE AND ERRONEOUSLY
APPLYING U.S.S.G. § 2Al.1 IN VIOLATION OF THE U.S.
SENTENCING GUIDELINES MANUAL

The second question to be addressed in this Appeal is whether the

District Court committed procedural error when imposing sentence by

applying U.S.S.G. § 2Al.1 in violation of the U.S. Sentencing Guideline

Manual.

At sentencing, the District Court began the proceeding by making the

appropriate findings in regards to the objections raised by Mr. Vickers to the

PSR. (STR., Vol 1, pg. 7).The District Court determined that the only quantity

of marijuana attributable to the Offense of Conviction was the ten (10) to

fourteen (14)

pounds (five (5) to seven (7) kilograms) testified about by Darryl Taylor. (TR.,

Vol 3, pg. 469). U.S.S.G. § 2D 1.1 determines that the base offense level for

more than five (5) kilograms of marijuana but less than ten (10) kilograms is

level 12. After making the quantity finding, the District Court then heard

evidence of unrelated murder charges that were previously dismissed against

Mr. Vickers out of Jackson County, Missouri. The only evidence presented

by the Government was the videorecorded statement of Kristen Forbush, a

surviving victim to the homicide offense. Forbush did not testify, and was not

subject to cross-examination.

Counsel for Mr. Vickers objected to the introduction of this video and asked

the District Court to first consider the legal applicability of the enhancement.

(STR., Vol 1, pgs. 4-5). The District Court denied the objection, heard the

evidence, and ultimately applied the enhancement to the sentence, imposing a

sentence of sixty (60) months imprisonment, which was the statutory

maximum sentence that could be imposed. (STR., Vol 1, pg. 58).

Mr. Vickers respectfully argues that the application of the U.S.S.G. §

2A 1.1 enhancement created several errors in the sentence that was imposed,

including an improper calculation of the sentencing guidelines range, and a

clear violation the the U.S. Sentencing Guidelines Manual.

A. Standard of Review

The Supreme Court has noted that a District Court should begin all sentencing proceedings by correctly calculating the applicable guidelines range. *Rita v. United States,* 551 U.S. 338, 356, 127 S. Ct. 2456, 2468, 168 L. Ed. 203 (2007). In reviewing Mr. Vickers' challenge to his sentence, this Court must "first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range[.]" *Gall v. United States,* 552 U.S. 38, 51, 128 S.Ct. 586, 169 L. Ed. 2d 445 (2007). District Courts commit procedural error by miscalculating the appropriate U.S. Sentencing Guidelines Manual range. *United States v. Campbell,* 764 F.3d 874, (8th Cir. 2013). Commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a Federal statue, or is inconsistent with, or a plainly erroneous reading of, that guideline. *Stinson v. United States,* 508 U.S. 36, 38, 113 S. Ct. 1913, 123 L. Ed. 2d 598 (1993). The Court of Appeals "review[s] de novo the 'legal conclusions a district court reaches in order to apply an enhancement for purposes of calculating an advisory guidelines range . . . while the factual findings underpinning the enhancement are reviewed for clear error.'" *United States v. Butler,* 594 F.3d 955, 965 (8th Cir. 2010).

**B.** U.S.S.G. § lBl.3 (The Relevant Conduct Guideline) Requires Both the Offense of Conviction and Relevant Conduct Offense Be Capable of Grouping Under U.S.S.G. § 3Dl.2. HOMICIDE OFFENSES ARE EXPLICITLY EXLCUDED FROM GROUPING.

The only Offense of Conviction in this case is Conspiracy to Distribute Marijuana. Murder was not charged in the Indictment, and was not a part of the Offense of Conviction. In determining whether a separate offense can be considered as Relevant Conduct to the Offense of Conviction, the Courts must follow the rules found in U.S.S.G. § lBl.3 (The Relevant Conduct Guideline). Careful review of U.S.S.G. § lBl.3 and other applicable guidelines clearly shows that the U.S. Sentencing Guidelines Manual strictly forbids the application of U.S.S.G. § 2Al.1 as applied in this case. See *United States v. Sellers,* 512 Fed. Appx. 319, (4th Cir. 2012). See also *United States v. Horton,* 693 F.3d 463, (4th Cir. 2012). *contra*, *United States v. Jackson*, 782 F.3d 1006 (8th Cir. 2015).

The Relevant Conduct Guideline, U.S. Sentencing Guidelines Manual § 1B1.3(a), states in part, that the application of a cross-reference shall be determined on the basis of all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the Defendant; and that occurred during the commission of the Offense of Conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense; *[solely]* with respect

43

to offenses of a character for which U.S. Sentencing Guidelines Manual § 3D 1.2(d) would require grouping of multiple counts, all acts and omissions described in § 1Bl.3(a)(l)(A) and § 1Bl.3(a)(l)(B) that were part of the same course of conduct or common scheme or plan as the Offense of Conviction. *Sellers,* 512 Fed. Appx. At 331.(emphasis added).

First, with respect to § 1Bl.3(a)(l)(A), the evidence is insufficient to conclude that the murder occurred during, in preparation for, or in the course of attempting to avoid detection in the drug Conspiracy in this case. The victim in the murder case, Edward Ewing, was not a Coconspirator, and the surviving victim, Kristen Forbush, stated that Ewing was not involved in any drug dealing or any illegal activity. The evidence was not that the murder occurred during the commission of any drug transaction, in preparation for any drug transaction, or in the course of attempting to avoid detection or responsibility for a drug transaction. See *United States v. Sellers,* 512 Fed. Appx. 319, 331 (4th Cir. 2012). See also *United States v. Allen,* 488 F.3d 1244, 1256 (10th Cir. 2007), holding that "The Wal-Mart incident and Mr. Allen's discussions with Ms. A did not occur in preparation for the methamphetamine sale, during the execution of the sale, or in the course of avoiding responsibility for the sale. See U.S.S.G. 1Bl.3(a)(l )."

44

Next, in order for U.S. Sentencing Guidelines Manual § 1Bl.3(a)(2) to apply, both the Offense of Conviction and the Relevant Conduct offense mustbe capable of grouping. **Homicide offenses are explicitly excluded from grouping.** (emphasis added). *Sellers,* 512 Fed. Appx. at 332.

Forbush suggested that a possible motive could have been "a rumor" that Garron Briggs, the other Defendant in the murder case, may have had some money stolen from him. This suggestion makes the instant case extremely similar to the *Sellers* case. In *Sellers,* the Defendants were convicted for participating in a drug Conspiracy. The District Court applied the2A 1.1 enhancement due to a victim that was murdered by one of the Defendants. At sentencing, the District Court heard testimony that the murder victim, Vance Davis, stole drugs from the Defendant, and Davis was later murdered. The District Court found, and the Fourth Circuit agreed, that there was a sufficient amount of evidence to conclude by a preponderance of the evidence, that the Defendant murdered Davis. However, after finding that the District Court did not clearly error in its factual determination that the Defendant murdered Davis, the Fourth Circuit then turned to the legal question of whether the Relevant Conduct Offense can be applied under the Cross-Reference Provision. Ultimately, the Fourth Circuit reversed and

———

remanded after ruling that the Sentencing Guidelines prohibited application of the 2A1.1 enhancement, because the murder offense could not be considered as Relevant Conduct to the drug Conspiracy offense. The Fourth Circuit held that The Relevant Conduct Guideline, U.S.S.G. § 1Bl.3(a), applied "solely with respect to offenses of a character for which U.S. Sentencing Guidelines Manual § 3D1.2 would require grouping of multiple counts." And as such, "both the Offense of Conviction and the Relevant Conduct offense must be capable of grouping." And further, that **"Homicide offenses are explicitly excluded from grouping."** (emphasis added). *contra, United States v.Jackson, 782 F3d 1006 (8th Cir. 2015).*

The Eighth Circuit has not squarely addressed this issue as it pertains to the grouping of offenses involving U.S.S.G. § 2Al.1. However, the Eighth Circuit agreed with these grouping rules in *United States v. Ewing,* 632 F.3d 412, (8th Cir. 2010). In *Ewing,* the District Court applied an enhancement to the Defendants sentence under U.S.S.G. § 2B3.l(b)(4)(B) and (b)(5), based on a finding that a first robbery that the Defendant committed was Relevant Conduct to a second robbery that the Defendant committed. On appeal, the Eighth Circuit remanded for resentencing after ruling that the enhancements were improper because although the "robberies were arguably "part of the same course of conduct" ... that definition of relevant conduct applies only to

46

offenses "for which § 3D 1.2(d) would require grouping of multiple counts."
Section § 3D1.2(d) specifically excludes robbery offenses governed by §
2B3.1, an exclusion confirmed by the Background commentary to §
1Bl.3(a)(2)." *Ewing,* 632 F.3d at 417.

In the case at hand, Section § 3D1.2(d) also specifically excludes
homicide offenses governed by 2Al .1, and therefore the dismissed murder
allegations cannot be considered as Relevant Conduct to the offense of
Conspiracy to Distribute Marijuana.

Further the Eighth Circuit has specifically held that a drug conspiracy,
and a drug conspiracy murder "do not involve a single course of conduct."
*United States v. Hanken,* 541 F.3d 1146, 1158 (8th Cir. 2008). In *Hanken,* a
case concerning double jeopardy issues, the Eighth Circuit agreed with the
District Court's reasoning based upon *Garrett v. United States,* 471 U.S.
773, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985), when the District Court
reasoned:

> Plainly, what is prohibited and punished by the statute defining a drug
> conspiracy offense is an agreement to commit *drug-trafficking
> offenses,* but what is prohibited and punished by the statute defining a
> drug conspiracy murder offense is *the murder,* albeit, a murder related
> to the drug-trafficking conspiracy. Thus, what the conspiracy murder
> offense punishes is a *collateral* "course of conduct" to the conduct at
> issue in the drug conspiracy offense, and the "greater offense" does
> not involve a "single course of conduct" shared with the "lesser

47

offense."Id.

Therefore, it is clearly established that the murder allegations cannot be considered as occurring during the same course of conduct as the Conspiracy offense, and the District Court committed procedural error in applying the enhancement to the sentence that was imposed.

**C.** Murder Must Be An Element of the Offense Charged in the Indictment

In order to properly apply the cross reference in U.S.S.G. § 2Al.1 to a Defendant's sentence, murder must be an object of the Conspiracy that is charged in the Indictment. See *United States v. Aderhollt,* 87 F.3d 740, 744 (5th Cir. 1996)(holding that in order for the 2Al.1 enhancement to apply, murder must be an object of the Conspiracy charged in the Indictment). Similarly, the Supreme Court held that "the 'death results' enhancement...is an element that must be submitted to the Jury and found beyond a reasonable doubt." *Burrage v. United States,* 134 S. Ct. 881, 187 L. Ed. 2d 715 (2014).

The essential reason for this is the Sixth Amendment implications noted in *Alleyne v. United States,* 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013). In *Alleyne,* the Supreme Court noted that "The essential Sixth Amendment inquiry is whether a fact is an element of the crime." Ryan Alleyne was convicted of using or carrying a firearm in relation to a crime of violence

48

_____

under 18 U.S.C. § 924(c)(l)(A). However, the sentence imposed was based on a finding that he brandished the firearm even though the Jury did not find brandishing beyond a reasonable doubt. The Supreme Court remanded the case holding that a fact that is considered to be an element of the offense must be submitted to the Jury. Although the sentence imposed was within the statutory sentencing range, the Supreme Court noted that "It is no answer to say that the defendant could have received the same sentence with or without that fact." In the instant case, Mr. Vickers was convicted of 21 U.S.C. § 841(b)(1)(D) and 846. The additional element for committing murder during the course of that Conspiracy is found in 21 U.S.C. § 848(e). Thus, in order for U.S.S.G. § 2A1.1 to appropriately apply, murder must have been an object of the Conspiracy charged in the Indictment, and this additional element must have been submitted to the Jury. Although the sentence that was imposed was within the five year statutory maximum sentencing range, the Supreme Court noted that "It is no answer to say that the defendant could have received the same sentence with or without that fact."

**D.** Application of the Enhancement Would Deprive Mr. Vickers of His Constitutional Rights Under the Sixth Amendment

A Defendant shall not be punished for crimes unless tried before and convicted by an impartial Jury. U.S. Const. Art. III, §2; U.S. Constitutional

Amendment VI. The Supreme Court in *Alleyne,* noted that "The essential Sixth Amendment inquiry is whether a fact is an element of a crime. When a finding of fact alters the legally prescribed penalty so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the Jury. "It is no answer to say that the defendant could have received the same sentence with or without that fact. It is obvious for example, that a defendant could not be convicted for assault, if the jury only finds the facts for larceny, even if the punishments prescribed for each crime are identical. One reason is that each crime has different elements and a defendant can be convicted only if the jury has found each element of the crime of conviction." *Alleyne,* 133 S. Ct. at 2162-63.

Mr. Vickers was convicted of conspiracy to commit only one crime, which was Conspiracy to Distribute Marijuana. Conspiracy Murder is a completely separate offense that is found in 21 U.S.C. § 848(e), and contains an additional element that forms a separate crime apart from 21 U.S.C. § 841 and 846.

"When a sentencing court considers conduct related to the Offense of Conviction, the objective is to determine the seriousness of the very crime found by the Jury or admitted by the Defendant. If the considered conduct has

nothing to do with the Offense of Conviction, the court is effectively

sentencing a Defendant for a crime that was never proved to the Jury, or

admitted by the Defendant. To allow this would empower the Government to

obtain punishment for any number of unrelated crimes, based on bench trial

rather than Jury trial. The relatedness principle thus keeps the system from

straying too far beyond the Sixth Amendment line." *United States* v. *Allen,*

488 F.3d 1244, 1255 (10th Cir. 2007).

**E.** The Allegations Are Not Supported By the Evidence

The only evidence presented by the Government in relation to the

murder allegations was a video recorded interview of Kristen Forbush.

Forbush did not testify and was not subject to cross-examination.

The Government depended on the statement in Forbush's interview in

which Forbush stated that she was 100% sure that Garron Briggs and Victor

Vickers were responsible for the crime. However, that Statement was made

two days after the the crime was committed, and is strongly contradicted by

by Forbush's initial statement to the authorities. (See DCD Exh. 256)

Forbush's first interview was at the hospital on the night of the crime, but

Forbush's initial statement to the authorities was her 911 call to the

emergency operator. The operator asked Forbush if she knew who shot her,

and Forbush responded "I don't fucking know", confirming that she did not know who shot her. It was not until later, once she had been transported to the hospital, that she attempted to identify the vehicle that she believed was driven by the suspects. She identified the vehicle as being a Grand Prix, and stated that she knew Kyesia Ransom to own that same type of car. It was at that point that she claimed Garron Briggs, who she knew at the time to be the boyfriend of Ransom, was the person who shot her. She then claimed that his accomplices were Mr. Vickers and Gregory Abercrombie. She stated that she remembered Mr. Vickers from school, but she really only knew Mr. Vickers as being the cousin of Briggs, and Abercrombie as their friend. She also stated that because of the fact that Mr. Vickers owned an entertainment company and promoted concerts and parties, she would see his face everywhere, meaning on flyers, the internet, and at events. Abercrombie was questioned by detectives regarding the matter, but was not charged with the crime after he provided a statement which confirmed that he was no longer friends with the other two individuals and that he had not seen or talked to them since his release from prison. Almost immediately after interviewing Forbush in the hospital, KCPD homicide detectives located Ransom's car and conducted a search. The subsequent search and investigation revealed

that Ransom's car was NOT involved in the incident. Two of Forbush's neighbors reported seeing a fleeing car, each stating a different make and model than the car described by Forbush.

Upon being informed of the allegations, Mr. Vickers and his Codefendant immediately and voluntarily reported to police headquarters to resolve the matter, at which time both Defendants were advised by their respective counsel to remain silent. Mr. Vickers and his Codefendant also voluntarily offered their DNA samples for testing. All DNA and forensic evidence has been tested, and neither Defendant showed any matches to the scene of the crime. The family of the deceased victim later submitted their own investigative report to KCPD detectives that clearly excludes Mr. Vickers and his Codefendant as the culprits, and goes on to name their true persons of interest. See Defendant's Sentencing Memorandum (DCD 641, Exh 3).

Further, Mr. Vickers was completely prepared to stand trial for the allegations as scheduled on September 23, 2013. However, at a pretrial conference on August 16, 2013, the Honorable Sandra C. Midkiff specifically told the Prosecutor that she would not grant any further continuances, and that the Prosecutor would either need

to try the case or dismiss the charges. The charges were subsequently

dismissed on September 10, 2013. (DCD 641, Exh 1). As such, these mere

allegations should not have formed the basis for an enhanced sentence in this

case.

Mr. Vickers would respectfully ask this Honorable Court to find that

the District Court committed procedural error in imposing sentence by

applying U.S.S.G. § 2Al .1 to the sentence that was imposed in violation of

applicable laws, and in violation of of the United States Sentencing

Guidelines Manual.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Mr. Vickers respectfully asks this Honorable Court to vacate his conviction due to the insufficient evidence that was presented at trial, and/or vacate his sentence as it was imposed in violation of the applicable laws and the United States Sentencing Guidelines Manual.

Date: August 3, 2015

Respectfully submitted,

*/s/* William David Langston
Langston Law, Chartered
115 East Park Street, Suite C
Olathe, Kansas 66061
(913) 341-8530
langstonlaw@sbcglobal.net
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/* William David Langston
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,311 words, including the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman font.

/s/ William David Langston
ATTORNEY FOR DEFENDANT

## Statement Under Rule 28A(h)(2)

I hereby certify that this brief and addendum have been scanned for viruses, and the brief is virus free.

/s/ William David Langston
ATTORNEY FOR DEFENDANT